UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COUNCIL OF CHURCHES HOUSING DEVELOPMENT FUND COMPANY, INC., | **COMPLAINT** |
| Plaintiff, | |
| v. | **Civil Action No.:** |
| ARLINGTON HOUSING CORPORATION, and BATAVIA INVESTORS, LTD., | |
| Defendants. | |

Plaintiff, complaining by its attorneys, McConville, Considine, Cooman & Morin, P.C., states the following:

## INTRODUCTION

1.      This is an action for breach of contract and for declaratory judgment commenced by plaintiff, the general partner, against the defendant limited partners of a limited partnership. The objective of the limited partnership is to own and operate a 224-unit affordable housing apartment project in Batavia, New York.  The limited partners have sought to remove plaintiff as the general partner so that they can take over direction and control of the limited partnership, and the management of the apartment project in order to turn it into an apartment project with market-rate rents.  There is no cause for removal of plaintiff as the general partner, and no right or authority vested in the limited partners to do so.  The actions of the limited partners have and will cause financial injury to plaintiff and dislocation of the low-income residents of the apartment project. Plaintiff seeks equitable and other relief against defendants.

2.      The following table of contents for this Complaint is provided as a convenience to the Court and the parties.

**PAGE**

I.      JURISDICTION AND VENUE ...................................................................3

II.     PARTIES ..................................................................................................3

III.    FACTS .....................................................................................................4

      A.  ESTABLISHMENT AND FUNDING OF THE AFFORDABLE HOUSING PROJECT............4

      B.  THE PARTNERSHIP AGREEMENT .........................................................5

      C.  THE 1981 AMENDMENT TO THE PARTNERSHIP AGREEMENT.................7

      D.  THE 1982 AMENDMENT TO THE PARTNERSHIP AGREEMENT.................7

      E.  THE 2004 AMENDMENT TO THE PARTNERSHIP AGREEMENT.................8

      F.  SATISFACTION OF THE LOAN AND RELEASE OF THE HUD-INSURED MORTGAGE..9

      G.  MANAGEMENT OF BIRCHWOOD VILLAGE AND THE PARTNERS

          BY CHURCHES .................................................................................9

      H.  CURRENT DEBT OBLIGATION OWED TO CHURCHES BY THE PARTNERSHIP...........10

      I.  PENDING TERMINATION OF THE PARTNERSHIP .....................................11

      J.  THREATS AND INTERFERENCE BY THE DEFENDANTS ...........................11

IV.    FIRST CLAIM ........................................................................................14

V.     SECOND CLAIM....................................................................................17

VI.    THIRD CLAIM .......................................................................................17

VII.   RELIEF REQUESTED............................................................................17

## I.   JURISDICTION AND VENUE

3.      This Court has jurisdiction of this action under 28 U.S.C. § 1332(a) based upon the diversity of citizenship of plaintiff and defendants, and the amount in controversy exceeding $75,000.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in the Western District of New York, and specifically in Genesee County, New York.

## II.   PARTIES

5.      Plaintiff, Council of Churches Housing Development Fund Company, Inc. ("Churches"), is a New York Not-For-Profit corporation incorporated in 1970.

6.      Churches was formed in 1970 pursuant to Article XI of the New York Private Housing Finance Law and the New York Membership Corporations Law.

7.      Churches was established exclusively to develop on a non-profit basis a housing project for persons of low income where no adequate housing exists for such persons pursuant to Section 2221 (d)(3) and/or 236 of the National Housing Act, as amended.

8.      Churches was formed by a group of churches in the Batavia, New York community, located in Genesee County.  The members of its board of directors are all volunteers.  None is compensated for his or her service.

9.      Churches is the Managing General Partner of a limited partnership now known as Batavia Townhouses, Ltd.

10.     Batavia Townhouses, Ltd. is a District of Columbia limited partnership, originally created under the name "Brunswick Ltd." (the "Partnership").

11.     The Partnership owns real property at 77-79 River Street in the City of Batavia, Genesee County, New York, commonly known as Birchwood Village Apartments, and consisting of a 224-unit apartment project, which the Partnership operates ("Birchwood Village").

12.     Defendant Arlington Housing Corporation ("AHC") is a Texas corporation, has its principal place of business in Texas, and is a limited partner of the Partnership.

13.     Defendant AHC is authorized as a foreign corporation to do business in New York.

14.     As described in this Complaint, defendant AHC, through its agent, has taken and threatened to take action against Churches in New York with respect to Birchwood Village.

15.     Defendant Batavia Investors, Ltd. ("Investors") is a District of Columbia limited partnership and is a limited partner of the Partnership, and was formerly known by the name "Essex Ltd."

16.     Defendant Investors' status as listed in the records of the District of Columbia is "revoked."

17.     As described in this Complaint, defendant Investors, through its agent, has taken and threatened to take action against Churches in New York with respect to Birchwood Village.

## III.     FACTS

### A. ESTABLISHMENT AND FUNDING OF THE AFFORDABLE HOUSING PROJECT

18.     On or about March 19, 1971, Churches borrowed $4,749,000 from H. & Val J. Rothschild, Inc. (the "Loan") to develop Birchwood Village, an apartment project in Batavia, New York for families with low or moderate income.

19.     The Loan was evidenced by a promissory note with a maturity date of March 1, 2012 (the "First Note"), and secured by a mortgage, which was insured by the United States Department of Housing and Urban Development ("HUD-Insured Mortgage").

20.     On or about March 19, 1971, Churches entered into a regulatory agreement with HUD which restricted the use of Birchwood Village to provide housing for "families having a low or moderate income," and denominated Birchwood Village as Project No. 014-55009 NP (the "Regulatory Agreement").

21.     Churches developed Birchwood Village, and upon completion of development began renting apartments to qualifying low-income residents..

22.     On May 5, 1978, the Partnership (then known as "Brunswick, Ltd.") was formed as a limited partnership under the laws of the District of Columbia.  Its general partners were Stephen D. Moses, Partnership Investors Services, Inc., and Palisades Housing Corporation.  Its limited partner was defendant Investors (then known as Essex, Ltd.)

23.     Lawrence F. Penn ("Mr. Penn") was an attesting witness to the execution of the Certificate of Limited Partnership of the Partnership.

24.     Pursuant to its organizational certificate, the primary purpose of the Partnership was "to invest in, own, manage, operate, hypothecate, sell and otherwise deal in respect of a multi-family housing project."

25.     On September 1, 1979, the Partnership executed a "Wraparound Purchase Money Obligation and Security Instrument" pursuant to which it acquired Birchwood Village from Churches in exchange for a purchase money obligation in the amount of $5,500,000 (the "Wraparound Note" and "Wraparound Mortgage").

## B. THE PARTNERSHIP AGREEMENT

26.     On or about December 1, 1979, an agreement titled "Amended and Restated Certificate and Agreement of Limited Partnership of Batavia Townhouses, Ltd." (the "Partnership Agreement") was executed.

27.     The Partnership Agreement changed the name of the Partnership from its former name of "Brunswick, Ltd." to "Batavia Townhouses, Ltd." A true copy of the Partnership Agreement is attached hereto as Exhibit A, and incorporated by reference as though fully set forth herein.

28.     The Partnership Agreement reflected the fact that the Partnership owned and operated Birchwood Village, referred to in the Partnership Agreement as "Batavia Townhouses."

29.     Pursuant to the Partnership Agreement, plaintiff Churches was admitted as a co-general partner of the Partnership, and designated as the Managing General Partner.

30.     Pursuant to the Partnership Agreement, defendant Investors (then known as "Essex, Ltd.") was named as the sole limited partner.

31.     Pursuant the Partnership Agreement, the entire capital contribution to the Partnership by defendant Investors as the sole limited partner was $400,000.

32.     Paragraph 2.4 of the Partnership Agreement sets forth the following Purpose of Business:

> The sole purpose and business of the Partnership shall be to acquire real property, together with the improvements thereon, as described in the Project Documents, and to own, hold, manage, maintain, and operate thereon the Project together with such other activities related directly or indirectly to the foregoing as may be necessary, advisable, or convenient to the promotion or conduct of the business of the Partnership, including without limitation the incurring of indebtedness and the granting of liens and security interests in the real and personal property of the Partnership to secure the payment of such indebtedness; all in such manner as will conform to all rules and regulations of Agency, and insofar as is consistent therewith,

will maximize the Federal, state and local income tax benefits available to the Partnership.  The specifications of such business shall be deemed a limitation upon the powers of the General Partner.

33.      The "Project Documents" referred to in ¶ 2.4 of the Partnership Agreement required that Birchwood Village be operated as an affordable housing project for low-income residents.

34.      On January 4, 1980, Churches executed a correction deed conveying the real property and buildings constituting Birchwood Village to the Partnership.

## C. THE 1981 AMENDMENT TO THE PARTNERSHIP AGREEMENT

35.      On or about May 1, 1981, the Partnership Agreement was amended by a document titled "Amendment to the Certificate and/or Agreement of Limited Partnership of Batavia Townhouses, Ltd. (the "1981 Amendment").

36.      Pursuant to the 1981 Amendment, David C. Green withdrew as the co-general partner of the Partnership.

37.      Pursuant to the 1981 Amendment, defendant AHC was admitted as a co-general partner of the Partnership.

38.      Upon information and belief, from 1981 to the present time, Mr. Penn has been a principal of defendant AHC.

39.      Under the 1981 Amendment, Churches remained the Managing General Partner of the Partnership.

## D. THE 1982 AMENDMENT TO THE PARTNERSHIP AGREEMENT

40.      Effective January 1, 1982, the Partnership Agreement was amended by a document titled "Amendment to the Certificate and/or Agreement of Limited Partnership of Batavia Townhouses, Ltd." (the "1982 Amendment").

41.     Pursuant to the 1982 Amendment, David C. Green's general partner interest in the Partnership was converted to a "Class B Limited Partnership interest with a ½% share of the profits of the Partnership and shall suffer no losses."  This purported conversion of Mr. Green's interest occurred even though he had already surrendered his general partnership interest pursuant to the 1981 Amendment.

42.     Pursuant to the 1982 Amendment, defendant AHC was reconfirmed as a General Partner "acquiring ½% of profits and 1% losses."

43.     Pursuant to the 1982 Amendment, Churches remained the Managing General Partner of the Partnership.

### E.  THE 2004 AMENDMENT TO THE PARTNERSHIP AGREEMENT

44.     Effective March 10, 2004, the Partnership Agreement was amended by a document titled "Amendment to the Agreement of Limited Partnership of Batavia Townhouses, Ltd." (the "2004 Amendment").

45.     Pursuant to the 2004 Amendment, defendant AHC resigned as a general partner and its interest was converted into a limited partnership interest in the Partnership.

46.     The 2004 Amendment implemented a change necessitated by settlement agreements entered into between Mr. Penn and HUD, and between Mr. Penn and the United States Department of Justice to resolve "all outstanding criminal, civil and administrative matters discussed in those agreements." ("Penn Settlement Agreements").  Exhibit B.

47.     Under the Penn Settlement Agreements, Mr. Penn was required to divest himself of his general partnership interests in most HUD-related properties, including the Partnership and Birchwood Village.

48.    Pursuant to the 2004 Amendment, Mr. Penn's corporation, defendant AHC, was ousted from the Partnership as a general partner, and was allowed to remain affiliated with the Partnership and Birchwood Village only as a limited partner.

49.    As a result of the 2004 Amendment, Churches remained the sole and Managing General Partner of the Partnership.

50.    For every year since the execution of the 2004 Amendment, defendants AHC and Investors, and Mr. Penn have received audited financial statements and tax returns for the Partnership.

**F.   SATISFACTION OF THE LOAN AND RELEASE OF THE HUD-INSURED MORTGAGE**

51.    In 2012, the Partnership made its final payment on the First Note, thereby paying off the Loan in full.

52.    Upon final payment of the First Note and repayment in full of the Loan by the Partnership in 2012, HUD provided the Partnership with a satisfaction of the HUD-Insured Mortgage, and a release of the Partnership from its Regulatory Agreement with HUD.

**G.   MANAGEMENT OF BIRCHWOOD VILLAGE AND THE PARTNERSHIP BY CHURCHES**

53.    Since 2004 and continuing to the present time, Churches has had sole responsibility for the control and management of the Partnership and Birchwood Village as the Managing General Partner.

54.    Churches has hired and has maintained an Executive Director, office staff, and maintenance employees to manage Birchwood Village (the "Birchwood Village Staff") since Birchwood Village was first developed.

55.     The Birchwood Village Staff has overseen all aspects of the management of the 224-unit apartment project, including leases with its tenants, collection of rents, payment of expenses, and maintenance, repairs and capital improvements to the apartment complex.

56.     The Birchwood Village Staff has managed and reported the finances of the Partnership, with the oversight of its retained and independent certified public accountants, EFPR Group, CPAs, PLLC (successor by merger of Toski & Co., CPAs, P.C.) ("CPA Firm").

57.     The CPA Firm has conducted an annual audit of the Partnership, produced periodic final statements, and prepared and filed the annual partnership tax returns for the Partnership, including the preparation and distribution of the annual K-1 statements to defendants Investors and AHC as the limited partners of the Partnership.

58.     Defendants Investors and AHC have received the periodic financial statements and the Partnership's annual tax return and K-1 from Churches each year since the 2004 Amendment.

## H.  CURRENT DEBT OBLIGATION OWED TO CHURCHES BY THE PARTNERSHIP

59.     Churches continues to hold the Wraparound Note made by the Partnership as an asset, secured by the Wraparound Mortgage.

60.     The Wraparound Mortgage is now the first priority lien on the Birchwood Village property.

61.     The unpaid principal amount owed on the Wraparound Note is $5.5 million. Accrued and unpaid interest on the Wraparound Note is in excess of $3.0 million (collectively, the "Debt Obligation").

62.     The Debt Obligation owed by the Partnership to Churches has been reflected annually on the financial statements and annual income tax returns of the Partnership prepared by

the CPA firm and reported annually to defendants Investors and AHC as the limited partners of the Partnership.

63.      Defendants Investors and AHC have received copies of the annual tax return of the Partnership and their K-1s.

64.      Defendants Investors and AHC have accepted the tax benefits that have accrued to them as limited partners of the Partnership, in the form of tax losses (the "Tax Benefits").

65.      Pursuant to the Partnership Agreement, defendants AHC and Investors have obtained 98.5% of the Tax Benefits generated by the Partnership from its operation of Birchwood Village.

66.      The Debt Obligation has been a principal basis upon which defendants AHC and Investors have obtained their Tax Benefits as limited partners of the Partnership.

## I.   PENDING TERMINATION OF THE PARTNERSHIP

67.      As specified under the terms of the Partnership Agreement (as amended), the Partnership will be dissolved automatically on December 1, 2020.  (Exhibit A, ¶ 2.5).

68.      Upon termination and dissolution of the Partnership, the Debt Obligation then owed by the Partnership to Churches will be the first priority debt to be satisfied from the assets of the Partnership.

## J.   THREATS AND INTERFERENCE BY THE DEFENDANTS

69.      Under the Partnership Agreement, Churches, as the sole General Partner and designated Managing General Partner "shall have the full, exclusive and complete right to direct and control the business of the Partnership."  (Exhibit A, ¶ 8.1, 8.5).

70.      Churches, through its volunteer board of directors and the Birchwood Village Staff, have conducted the business of the Partnership consistent with its purpose and mission, and in

accordance the requirements of the Partnership Agreement, including the obligation to "maximize the Federal, state and local income tax benefits available to the Partnership." (Exhibit A, ¶ 2.4).

71.     On June 28, 2018, Mr. Penn issued a letter to Churches requesting a meeting "to discuss future plans for the Property." In that letter Mr. Penn recommended "that independent legal counsel for [Churches] be in attendance at the meeting."

72.     On August 9, 2018, the meeting requested by Mr. Penn was held at the business offices of Birchwood Village. During that meeting, Mr. Penn accused Churches of violating its fiduciary duties as the General Partner.

73.     At the August 9, 2018 meeting, Mr. Penn offered Churches $6.5 Million in exchange for Churches' general partnership interest and the Debt Obligation resulting from the Wraparound Note and Wraparound Mortgage ("First Offer").

74.     At the August 9, 2018 meeting, Mr. Penn, as agent for defendants AHC and Investors, threatened to remove Churches as the General Partner if Churches did not accept his First Offer. Churches asked Penn to make his First Offer in writing and he agreed to do so.

75.     By letter from their attorneys dated August 21, 2018 to Churches' attorneys, AHC and Investors repeated their accusation of breach of fiduciary duties by Churches and threatened removal of Churches as the General Partner (the "Threat Letter").

76.     In the Threat Letter, AHC and Investors offered Churches a "business resolution," whereby Churches would be paid $5.5 Million in exchange for the Debt Obligation and its general partnership interest. ("Second Offer").

77.     As part of the business resolution contemplated by the Second Offer, defendant AHC would be "reinstated as the new General Partner."

78.     Upon information and belief, Mr. Penn is the President, a director and principal shareholder of defendant AHC, and a principal of the general partner of defendant Investors.

79.     By letter from its attorneys dated September 10, 2018, Churches advised defendant AHC and Investors that: (i) their accusation of breach of fiduciary duty was without merit; (ii) Churches had faithfully discharged its duties as the General Partner; and (iii) Churches rejected the Second Offer.

80.     By letter dated October 26, 2018, Churches informed Mr. Penn that: (i) it intended to continue operating Birchwood Village as affordable housing pursuant to the terms of the Partnership Agreement; (ii) the Partnership was set to terminate on December 1, 2020 pursuant to the terms of the Partnership Agreement; (iii) Churches as a secured creditor was owed more for the Debt Obligation than the Partnership had in assets, so that there would be nothing remaining to distribute to the limited partners upon liquidation of the Partnership; and (iv) therefore, the limited partners should plan their exit from the Partnership and inform Churches of that plan.

81.     By letter dated November 19, 2018, Mr. Penn, on behalf of defendants AHC and Investors, gave notice of their intent to remove Churches as General Partner of the Partnership, and substitute defendant AHC as the General Partner, effective December 19, 2019 (the "Removal").

82.     By letter of their attorneys dated December 11, 2019, defendants AHC and Investors have threatened to have their agents arrive at the Birchwood Village offices on December 19, 2019 "to take control of all records of the Partnership and [Birchwood Village], including the bank accounts and all general operating records" (the "Attempted Takeover").

83.     Because there is no "cause" for the Removal as required by the Partnership Agreement, Churches opposes the Removal and has no intention of consenting to it.

84.     Because there is no "cause" for the Removal as required by the Partnership Agreement, Churches will not surrender direction and control of the Partnership and management of Birchwood Village to defendants AHR and Investors or their agents.

## IV.     FIRST CLAIM
### (Breach of Contract justifying an Injunction)

85.     Plaintiff repeats and realleges as though fully set forth herein each of the allegations contained in paragraphs 1 through 84.

86.     The Partnership Agreement provides that Churches as the General Partner may only be removed for "cause," as specified in ¶ 11.1.

87.     The Threat Letter, Removal and Attempted Takeover are all without justification and fail to state any valid "cause" for removal of Churches as the Managing General Partner under the terms of the Partnership Agreement.

88.     A "cause" alleged by defendants AHC and Investors to constitute a "material breach" under ¶ 11.1 of the Partnership Agreement is Churches' continuing to maintain Birchwood Village as an affordable housing project, rather than increasing all of the rents to the "fair market value of the rental units."

89.     A "cause" alleged by defendants AHC and Investors to constitute a "material breach" under ¶ 11.1 of the Partnership Agreement is that Churches as Managing General Partner has kept the rents at Birchwood Village "artificially low", which has "effectively siphoned the equity interest of my clients to its own account."

90.     Transforming Birchwood Village from an affordable housing project for low-income residents into a market-rate rental apartment project would be contrary to the expressly

stated business purpose of the Partnership as conceived and established in 1979, and agreed upon by defendant Investors and AHC as limited partners.

91.     Transforming Birchwood Village from an affordable housing project into a market-rate rental apartment project would be contrary to the purpose and mission of Churches as conceived and established to develop a "low income housing project."

92.     When defendants AHC and Investors became limited partners of the Partnership they agreed to have Churches serve as the General Partner, knowing of the purpose and mission of Churches and expressly agreeing to the terms of the Partnership Agreement.

93.     From the time of their initial investment in the Partnership until August 2018, defendants AHC and Investors never asserted that Birchwood Village should be converted into a market-rate rental apartment project.

94.     Defendants AHC and Investors have no authority under the Partnership Agreement to direct Churches as the General Partner to convert Birchwood Village from an affordable housing project for low-income residents into a market-rate rental apartment project.

95.     Under ¶ 9.1 of the Partnership Agreement, defendants AHC and Investors as limited partners "shall not have any voice or take part in the management or control of the business of the Partnership."

96.     Under ¶ 9.1 of the Partnership Agreement, defendants AHC and Investors shall not have "any power or authority to act for or on behalf of the Partnership."

97.     Because of the circumstances that mandated the involuntary withdrawal in 2004 of Mr. Penn's investment entity (defendant AHC) as general partner from the Partnership pursuant to the Penn Settlement Agreements, Churches believes that neither AHC nor any other entity in

which Mr. Penn is an officer, director, shareholder or member would be a proper general partner of the Partnership.

98.     The purported substitution of defendant AHC, a limited partner, to the status of a general partner, constitutes a breach of the Partnership Agreement.

99.     The Threat Letter, Removal and Attempted Takeover have been motivated not by any legitimate concern with Churches' direction and control of the Partnership or its management of Birchwood Village, but rather by the tax consequences to the limited partners that will accrue upon the termination of the Partnership on December 1, 2020.

100.    The Threat Letter, Removal and Attempted Takeover, and each of them, constitute breaches of the Partnership Agreement by defendants AHC and Investors.

101.    If actually effectuated, the Removal would result in irreparable harm to Churches, its employees and the low-income residents of Birchwood Village.

102.    The Attempted Takeover would constitute a trespass and breach of the peace requiring intervention by local law enforcement.

103.    If actually effectuated, the Attempted Takeover would result in irreparable harm to Churches, its employees and the low-income residents of Birchwood Village.

104.    The actions and threatened actions of defendants AHC and Investors justify a permanent injunction, preventing them from effectuating the Removal or the Attempted Takeover, which would impermissibly interfere with Churches' "full, exclusive and complete right to direct and control the business of the Partnership" under the Partnership Agreement. (Exhibit A, ¶ 8.1, 8.5, 9.1).

## V.   SECOND CLAIM
### (Breach of Contract justifying damages)

105.    Plaintiff repeats and realleges as though fully set forth herein each of the allegations contained in paragraphs 1 through 100.

106.    The actions and threatened actions of defendant AHC and Investors as described has and will cause damages to Churches.

## VI.   THIRD CLAIM
### (Declaratory Judgment)

107.    Plaintiff repeats and realleges as though fully set forth herein each of the allegations contained in paragraphs 1 through 106.

108.    Based on the foregoing, there is an actual controversy between the parties within the jurisdiction of the Court for which a declaratory judgment is authorized and appropriate under 28 U.S.C. § 2201.

109.    Plaintiff seeks declaratory relief as described herein.

## VII.   RELIEF REQUESTED

**WHEREFORE**, plaintiff prays for judgment against defendants AHC and Investors, jointly and severally:

(1)      on the First Claim, for a permanent injunction: (i) preventing AHC and Investors from ever again interfering with plaintiff Churches' "full, exclusive and complete right to direct and control the business of the Partnership" under the Partnership Agreement; and (ii) preventing AHC and Investors from being substituted or added as a general partner of the Partnership;

(2)    on the Second Claim, for compensatory damages in an amount found to be just and proper by the trier of fact upon the trial of this action;

(3)    on the Third Claim, for a declaratory judgment resolving the controversy between the parties, by declaring:

    a.   There is no valid "cause" to remove Churches as the General Partner under the Partnership Agreement;

    b.   Churches has not breached its fiduciary duties as General Partner of the Partnership;

    c.   the Removal is unjustified, void, and unenforceable;

    d.   the Attempted Takeover is unjustified, void and unenforceable;

    e.   neither AHC, Investors, nor any other entity in which Mr. Penn is an officer, director, shareholder, partner or member is permitted to become a general partner of the Partnership; and

    f.   neither Churches nor the Partnership is obligated to convert Birchwood Village from an affordable housing project for low-income residents into an apartment project with market-rate rents;

together with an award of attorney's fees as the prevailing party pursuant to ¶ 16.13 of the Partnership Agreement, the costs and disbursements of this action, and such other, further or different relief as to the Court may seem just and proper.

Dated:   December 17, 2018

              McCONVILLE, CONSIDINE,
                COOMAN & MORIN, P.C.
              Attorneys for plaintiff

              S/ Kevin S. Cooman
              Kevin S. Cooman, Esq.

S/ Peter J. Weishaar
Peter J. Weishaar, Esq.

25 East Main Street
Rochester, New York 14614
Telephone: (585) 546-2500
kcooman@mccmlaw.com
pweishaar@mccmlaw.com

15925.003 - #315